IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCI L. CREEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 15-601 |
| v. | ) | |
| | ) | |
| ARMSTRONG COUNTY, DAVID K. BATTAGLIA, in his individual and official capacities, ROBERT T. BOWER, in his individual and official capacities, RICHARD L. FINK, in his individual and official capacities, RONALD D. BAUSTERT, in his individual and official capacities, RANDALL J. BROZENICK, in his individual and official capacities, MARYANNE S. KOLENY, in her individual and official capacities, and DANIEL P. LUCOVICH, in his individual and official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | United States Magistrate Judge Cynthia Reed Eddy |
| Defendants. | ) | |

**MEMORANDUM OPINION**

CYNTHIA REED EDDY, United States Magistrate Judge

**I. INTRODUCTION**

Pending before the Court is a partial motion to dismiss filed by the above-captioned Defendants: Armstrong County, David K. Battaglia, Robert T. Bower, Richard L. Fink, Ronald D. Baustert, Randall J. Brozenick, Maryanne S. Koleny, and Daniel P. Lucovich. They seek dismissal of various portions of the amended complaint filed by Plaintiff Marci L. Creel, a former employee of Armstrong County. The amended complaint consists of the following Counts: (I) Hostile Work Environment Sexual Harassment against Armstrong County; (II) Sex Harassment Retaliation against Armstrong County; (III) Americans with Disabilities Act ("ADA") – Failure to Accommodate against Armstrong County; (IV) ADA – Hostile Work

Environment against Armstrong County; (V) ADA – Retaliation against Armstrong County; (VI) Pennsylvania Humans Relation Act ("PHRA") against all Defendants; and (VII) 42 U.S.C. § 1983 – First Amendment Retaliation against all Defendants.

Specifically, Defendants seek to dismiss Creels' claims for punitive damages in Counts III, IV, and V, arguing that the ADA does not permit recovery of punitive damages against the County. They also seek to dismiss Creel's First Amendment retaliation claim, Count VII, in its entirety, asserting that the amended complaint does not show that Creel engaged in protected activity. Alternatively, Defendants argue that the First Amendment retaliation claim is deficient to the extent that it seeks recovery from the individual Defendants in their *official* capacities, as such claims are duplicative of a claim against the County. They also claim that this claim is defective as it relates to the individual Defendants in their individual capacities because Creel does not specify which Defendants participated in Creel's termination.

In response to this motion, Creel agrees to withdraw her claims for punitive damages against Armstrong County in Counts III, IV, and V. She also agrees to withdraw the First Amendment retaliation claim as it relates to the individual Defendants in their official capacities.[1] Therefore, the only issue for the Court to decide is whether Creel has stated a claim against Armstrong County and the individual Defendants in their individual capacities for the First Amendment retaliation claim. For the reasons that follow, Defendants' motion to dismiss this claim will be denied.

## II. FACTUAL BACKGROUND

For purposes of resolving the pending motion, the Court accepts all of the factual allegations in the amended complaint as true, and draws all reasonable inferences in a light

---

[1] Creel has attached a proposed second amended complaint reflecting these changes. See (ECF No. 32-1).

most favorable to Creel.[2]

Creel worked for Armstrong County from June 1990 until she was terminated in November 2013. She was initially hired as a dispatcher in the County's predecessor agency, the Emergency Operating Center. In 2008, she was promoted to the position of training and quality assurance coordinator.

The amended complaint generally alleges, as well as provides specific examples of, Creel's co-workers using inappropriate and sexually offensive language during her employment with Armstrong County.[3] It also asserts that her co-workers and/or supervisors regularly or occasionally engaged in the following behavior: having loud discussions regarding sexually explicit topics they were researching; sharing their own personal sexual experiences; making gestures and references to masturbating and oral sex; and watching pornographic videos. Additionally, on one occasion, the employees and supervisors took a quiz from Cosmopolitan magazine that determined a person's "type" based on how he or she responds during an orgasm. On a different occasion, during a training session, a male employee put whipped cream and chocolate sauce on top of his clothed body and then his female co-worker ate it off him in a sexually suggestive manner. Additionally, Creel alleges that the 911 Coordinator, Defendant Baustert, intentionally assigned door entry codes to specific individuals that spelled sexually offensive words. In particular, one such code he assigned was "2868," which translates to the word "c**t." As a result, Creel's co-workers began referring to women as a "2868."

According to the amended complaint, trainees repeatedly complained to Creel and to Armstrong County's leadership that the above conduct was disruptive and interfered with their ability to learn. Creel also repeatedly complained about the alleged sexually hostile work

---

[2] See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).
[3] Specific examples include use of the words "c**t," "c**ks****er," "f*g," and "l***bo," and making jokes about a man's ability or inability "to get it up." See (ECF No. 25, ¶¶ 19, 26).

environment, and its impact on her ability to perform her job. She made numerous complaints to all Defendants, and alleges that she suffered retaliation as a result thereof, as detailed below.

In August 2011, Creel complained to Defendants Koleny and Baustert about the alleged sexually hostile work environment. Shortly thereafter, on September 6, 2011, Defendants restricted her work schedule.

On September 20, 2012, Creel delivered a formal written complaint about the sexually hostile work environment to Defendants Bower, Battaglia, Fink, Baustert, Brozenick, and Koleny. Five days later, on September 25, 2012, Creel was demoted. The training coordinator aspects of her job were removed and replaced with dispatcher duties. Defendant Baustert allegedly told Creel that her continuous complaints were a potential liability for Armstrong County. Because Creel had continuously reported the offensive conduct of her co-workers and supervisors, Baustert told Creel that "she no longer shared his vision so she was no longer someone he wanted on his team."

In December 2012, Creel contacted the EEOC and filed her first charge of discrimination regarding the alleged sexually hostile work environment, the lack of any action in response to her complaints of same, and her demotion, which she asserts was retaliatory.

After the demotion, Creel would spend twenty-two hours (out of a forty hour work week) performing dispatcher duties. Since birth, Creel has suffered from a medical condition known as optic atrophy, which affects her vision, and in turn, affected her ability to perform the dispatcher duties. One of Creel's co-workers also had optic atrophy, and Armstrong County configured a work station to accommodate that employee. Due to her demotion, Creel was being scheduled to work at the same time as the other co-worker with optic atrophy. Thus, the work station that accommodated Creel's disability was occupied, so she requested that Armstrong County

configure a second work station with the same accommodation. Creel first requested this accommodation from Defendants Baustert, Bozenick, Koleny, Bower, and Battaglia. She later reported her request for a reasonable accommodation to Defendants Fink and Lucovich.

In response, Defendants refused to provide Creel with the same work station as her co-worker, but configured a work station in which the computer monitors could be pulled closer to the user. Creel repeatedly requested to have the same accommodation as her co-worker, but each request was denied. The amended complaint alleges that after Creel made these requests for accommodations, Defendants began scheduling her to work shifts that conflicted with her other job, causing her to take time off work, and Defendants began subjecting her to a hostile work environment because of her requests. For example, the amended complaint asserts that Creel's co-workers would do the following: turn off the lights and work in the dark during the evening shift, refuse to provide Creel with information necessary to do her job, wear dark glasses while making sarcastic and offensive comments about her disability, fail to replace burnt-out light bulbs above her work station, and configure the computers so that they would not work for Creel but would work for her co-worker with the same disability. Creel reported this conduct of her co-workers, which resulted in a "light-blocking coating" being applied to the large exterior window next to Creel's cubicle, thereby making her assigned work area even darker. Furthermore, Creel was excluded from professional opportunities in which she was previously included.

As a result, Creel filed a second charge of discrimination with the EEOC, alleging that Defendants failed to engage in the interactive process, failed to provide her with reasonable accommodations, and retaliated against her for complaining of the sexually hostile work environment and filing the first EEOC charge. Nonetheless, Defendants' continued to refuse to

5

accommodate Creel's disability in the manner in which she had requested and continued to subject her to the same work environment, which Creel maintains was sexually hostile.

On October 16, 2013, Creel was denied a promotion to position of dispatch supervisor, although she was qualified for the position. Defendants did not provide Creel with any reason for their decision, and instead hired a less qualified male with no known disabilities who had not made any internal complaints or filed any charges with the EEOC. On November 12, 2013, Creel was terminated for unsatisfactory job performance. According to Creel, she was denied the promotion and fired because of her complaints about the sexually hostile work environment and her requests for reasonable accommodation regarding her disability.

## III.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure prescribe a notice pleading standard in which the pleader must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] To satisfy this standard, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"[5] and also "raise a right to relief above the speculative level."[6]

When faced with a motion to dismiss under Rule 12(b)(6), the Court separates the factual and legal elements of a claim.[7] The well-pleaded facts are accepted as true, but legal conclusions may be disregarded.[8] Next, a determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for

---

[4]  Fed. R. Civ. P. 8(a).
[5]  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
[6]  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted).
[7]  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).
[8]  Id. at 210-11; see also Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) ("[T]he court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotation and citation omitted).

relief;'" that is, whether the facts in the complaint *show* that the plaintiff is entitled to relief.[9] This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[10] It does not, however, "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements of the claim.[11]

## IV. DISCUSSION

To state a First Amendment retaliation claim, the plaintiff must allege (1) that she engaged in a protected activity, (2) that the defendants' retaliatory action was sufficient to deter a person of ordinary firmness form exercising her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action.[12] The first element is a question of law, while the remaining elements are questions of fact.[13]

Defendants argue that Creel has failed to adequately allege facts relating to the first element – that she engaged in protected activity. "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement made."[14] Defendants assert that Creel's statements cannot be considered to be protected activity because Creel did not make her complaints while speaking "as a citizen," and because Creel's complaints did not "involve a matter of public concern." The

---

[9] Fowler, 578 F.3d at 211.
[10] Iqbal, 556 U.S. at 679.
[11] Twombly, 550 U.S. at 557.
[12] Lauren W. ex rel Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).
[13] Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (citing Curinga v. City of Clairton, 357 F.3d 305, 310 (3d Cir. 2004)).
[14] Hill, 455 F.3d at 241-42 (quoting Garcetti v. Ceballos, 547 U.S. 410 (2006)).

Court will address each contention in turn.

Regarding this first contention, Defendants assert that Creel's statements/complaints about the sexually hostile work environment and disability discrimination were only made pursuant to her official job duties. Thus, according to Defendants, Creel was not speaking "as a citizen" when she made them.[15] "The critical question … is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."[16] This is a practical inquiry in which we do not focus on "excessively broad job descriptions," but rather consider whether the speech at issue was among the things that the employee was "employed to do."[17] The fact that Creel made the complaints up the chain of command within the confines of her workplace, rather than publicly, is not dispositive.[18] At this stage, the Court must reject Defendants' assertion that the complaints were made pursuant to Creel's duties at the emergency center. Indeed, nothing in the amended complaint suggests that reporting a sexually hostile work environment or reporting disability discrimination were part of her ordinary job responsibilities as training coordinator, quality assurance coordinator, or dispatcher.[19]

Regarding Defendants' other contention that Creel's speech did not involve a matter of public concern, they assert that Creel only made those statements to address her own personal

---

[15] See Garcetti, 547 U.S. at 421 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").
[16] Lane v. Franks, — U.S. —, —, 134 S. Ct. 2369, 2379 (2014).
[17] Flora v. Cty. of Luzerne, 776 F.3d 169, 179 (3d Cir. 2015) (quoting Garcetti, 547 U.S. at 421, 424-25);
[18] See Garcetti, 547 U.S. at 420.
[19] Cf. id. at 421-22 (deputy district attorney who wrote a memorandum to supervisors regarding potential problems with a search warrant in a particular case dealt with that employee's official duties); Foraker v. Chaffinch, 501 F.3d 231, 241-43 (3d Cir. 2007) (police expert firing instructors' statements concerning hazardous conditions at a firing range were made pursuant to their official duties because reporting problems internally "up the chain of command" was among the tasks that they were paid to perform), *abrogated on other grounds by* Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379 (2011).

grievances relating to her own employment conditions. "A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'"[20] When conducting this analysis, courts consider "the content, form, and context of that statement, as revealed by the whole record."[21] Accordingly, at the motion to dismiss stage, where the factual record has not been developed, it is often premature to make this determination.[22]

The amended complaint contains sufficient factual allegations to overcome Defendants' motion to dismiss. It alleges, *inter alia*, that Creel made numerous statements to Defendants, who consist of Creel's supervisors and three County Commissioners, complaining of a sexually hostile work environment involving her co-workers and supervisors. Defendants make much of the fact that Creel's statements were private in nature, however, that alone does not "vitiate the status of the statement as addressing a matter of public concern."[23] Significantly, the alleged sexually hostile work environment complained of by Creel did not only affect Creel; the amended complaint alleges that this work environment also affected, at the very least, other trainees.[24] In light of the fact that Creel made such statements to her supervisors and all three of Armstrong County's Commissioners – a position reserved only for those who are elected to

---

[20] Green v. Phila. Hous. Auth., 105 F.3d 882, 885-86 (3d Cir. 1997) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).
[21] Rankin v. McPherson, 483 U.S. 378, 384 (1987).
[22] See Hill, 455 F.3d at 242 (noting that the procedural posture of the case, which was at the motion to dismiss stage, prevented the Court from making a determination as to whether the speech involved a matter of public concern, as it was necessarily dependent upon a fully developed record) (footnote omitted).
[23] Rankin, 483 U.S. at 387 n. 11 (citing Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410, 414-16 (1979)).
[24] Moreover, it is reasonable to infer that the behavior of Creel's co-workers and supervisors (e.g., taking sexually suggestive quizzes, watching pornography, loudly discussing sexually inappropriate topics and personal sexual experiences, referring to women at the office in a degrading code, using words that are generally regarded as homophobic slurs, etc.) affected other employees of Armstrong County as well.

office,[25] the Court finds that it would be inappropriate, at this stage, to conclude that her statements did not involve a matter of public concern, as such a determination is dependent upon the statements' content, form, and context, as revealed by the whole record.[26]

With respect to Defendants' alternative argument that the First Amendment retaliation claim against the individual Defendants should be dismissed, they attack the amended complaint's failure to specifically identify which of these individuals participated in the termination decision. Although Creel did not directly respond to this argument in her opposing brief, the Court nevertheless declines to dismiss this claim against them on this basis. The amended complaint outlines the statements that Creel made to each of these individual Defendants, which demonstrates that they all had notice of same, and suggests that she suffered retaliation from Defendants as a result thereof. Moreover, as a practical matter, the parties have been engaging in discovery since August 2015 and are currently scheduled to continue doing so until the end of February 2016. Because the amended complaint sufficiently puts the Defendants on notice of the claims against them such that they will easily be able to discern in discovery which individuals were in fact involved in Creel's termination, Defendants' attempt to dismiss this claim on a purported lack of specificity is denied.

## V. CONCLUSION

Based on the foregoing, Defendants' partial motion to dismiss Creel's First Amendment retaliation claim is denied. An appropriate Order follows.

---

[25] The amended complaint identifies Defendants Battaglia, Bower, and Fink as Armstrong County Commissioners. (ECF No. 25, ¶¶ 6-8).

[26] See Azzaro v. Cty. Of Allegheny, 110 F.3d 968 (3d Cir. 1997) (public employee that reported being sexually harassed by an assistant to the County Commissioner engaged in protected activity because gender discrimination, when practiced by those exercising authority in the name of a public official, is a matter inherently of public concern); Montone v. City of Jersey City, 709 F.3d at 181, 194 (3d Cir. 2013) (there is no bright-line rule that a personal complaint about discrimination affecting only the complaining employee can *never* amount to an issue of public concern protected by the First Amendment; rather, that is simply one relevant factor to be considered in light of all of the surrounding circumstances).

Date: <u>January 13, 2016</u>.

By the Court:

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF